IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RANDY HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:14cv1141-CSC |
| | ) | (WO) |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION and ORDER

## I.  INTRODUCTION

Plaintiff Randy Hill ("Hill") challenges the Commissioner's denial of disability and supplemental security income benefits. A brief recitation of the procedural history of the case is necessary to understand the court's resolution of this matter.

Hill applied for disability insurance benefits[2] pursuant to Title II of the Social Security Act,  42 U.S.C. § 401 et seq., and for supplemental security income benefits under Title XVI of the Social Security Act,  42 U.S.C. § 1381 et seq., alleging that he was unable to work because of a disability.  His application was denied at the initial administrative level.  The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ also denied the claim.  The Appeals Council rejected a

---

[1]  Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.

[2]  The plaintiff's insured status for purposes of disability insurance benefits expired on March 31, 2005.

subsequent request for review.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[3]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Hill then appealed the Commissioner's denial to this court.

On April 15, 2010, the court remanded the case to allow the ALJ to more fully develop the record regarding the plaintiff's intellectual and mental impairments.  *Hill v. Astrue*, 1:09cv01-CSC at 5 (M.D. Ala. 2010).  "There is sufficient evidence in the record from which the ALJ should have concluded that it was necessary to secure additional evidence regarding the plaintiff's intellectual functioning before rendering a decision regarding his disability."  *Id*. at 8.

On May 16, 2011, another administrative hearing was held before a different ALJ who in a new opinion dated July 7, 2011, denied Hill benefits.  (R. 340).  On July 13, 2012, the Appeals Council determined that the ALJ's residual functional capacity assessment was erroneous.

> The decision finds that the claimant has the residual functional capacity to perform a reduced range of light work with nonexertional limitations including mild limitations in his ability to understand, remember, and carry out simple instructions and to make judgments on simple work-related decisions and moderate limitations in his ability to understand, remember, and carry out complex instructions and to make judgments on complex work-related decisions; and moderate limitations in his ability to interact appropriately with the public, supervisors, and co-workers and to respond appropriately to usual work situations and changes in a routine work setting.  However, the decision does not define the terms "mild" or "moderate."  Accordingly, further consideration should be given

---

[3]  Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

to the claimant's maximum residual functional capacity.  In doing so, nonspecific qualifying terms (e.g. moderate, moderately severe, marked) should not be utilized because they do not describe function and do not usefully convey the extent of the claimant's limitations.

(R. 340).

The Appeals Council remanded the matter to the ALJ for further proceedings to (1) obtain addition evidence regarding Hill's impairments; (2) address all medical evidence and provide reasons supporting the weight assigned to those opinions; (3) further consider Hill's maximum residual functional capacity by specifically evaluating the treating and consultative physicians' opinions; and (4) if warranted, secure further evidence from a vocational expert. (R. 341).

After another hearing on October 5, 2012,  the ALJ concluded that Hill has severe impairments of "degenerative disc disease of the cervical spine and lumbar spine, joint effusion of the right knee, hypertension, adjustment disorder with depression, alcohol dependence, and borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c))." (R. 214).  The ALJ further concluded that Hill could not perform his past relevant work as butcher and brick layer helper.  (R. 228).  Nonetheless, the ALJ concluded that Hill was not disabled because "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id*.).

The plaintiff appealed the ALJ's decision to the Appeals Council, requesting the Appeals Council again review the ALJ's decision.  The Appeals Council rejected the request for reconsideration, and the ALJ's February 2013 decision became the final decision of the

Commissioner.

The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3).  Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that once again the decision of the Commissioner should again be reversed and this case remanded to the Commissioner for further proceedings.

## II.  STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[4] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

(1)    Is the person presently unemployed?
(2)    Is the person's impairment severe?
(3)    Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4)    Is the person unable to perform his or her former occupation?
(5)    Is the person unable to perform any other work within the economy?

---

[4]   A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

4

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[5]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

[The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  THE ISSUES

**A.  Introduction**.  Hill was 40 years old at the alleged date of onset of disability and 50

---

[5] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

years old at the time of the 2012 hearing before the ALJ.  He has a tenth grade education but he was in special education classes.  (R. 19, 32, 129).  His prior work experience includes work as a brick mason's helper and a butcher.[6]  (R. 272).  Following the hearing, the ALJ concluded that the plaintiff suffers from severe impairments of "degenerative disc disease of the cervical spine and lumbar spine, joint effusion of the right knee, hypertension, adjustment disorder with depression, alcohol dependence, and borderline intellectual functioning."  (R. 214).  The ALJ further concluded that although Hill suffers from thoracic spondylosis, because "there (sic) evidence does not establish that the spondylosis results in more than minimal limitations  . . . [and] the limitations in the residual functional capacity for the degenerative disc disease of the cervical and lumbar spine would also accommodate any limitations that would possibly result from the thoracic spondylosis." (R. 214). The ALJ further concluded that Hill did not have an

---

[6] There is some ambiguity in the record as to whether Hill performed the work of a butcher at the skilled level or as a meat cutter which is unskilled.  For example, at the first administrative hearing in 2008, Hill testified as follows:

    A:    . . . I worked at a meat market for about 13 years tearing hogs.  I was a butcher.

    Q:    So, you were actually butchering hogs, whole hogs?

    A:    Yes, sir, they'd bring me on the truck and we would kill them and process them.

    Q:    You'd kill them there –

    A:    Yes, sir.

(R. 23).

    The vocational expert determined that his past relevant work was as a butcher at the skilled level.  (R. 36).  At the March 9, 2011 administrative hearing, the vocational expert determined that his past relevant work was as a meat cutter at the heavy, unskilled level. (R. 272).  At the October 25, 2012 administrative hearing, the vocational expert testified that Hill's past relevant work was as a butcher at the skilled level.  (R. 250).

impairment or combination of impairments that met any of the Listings.  (R. 215).  She specifically considered whether Hill met Listings 1.04, 1.02, 4.01, 12.04 or 12.09.

The ALJ found that Hill was unable to perform his past relevant work but concluded that he

> has the residual functional capacity to perform a reduced range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).  He can lift and carry up to approximately twenty pounds occasionally and ten pounds frequently.  He can sit for six hours in an eight-hour workday.  He can stand and/or walk  for two (sic) at a time before needing to change positions and for a total of six (sic) in an eight-hour workday.  He can occasionally push and pull arm and leg controls.  He can occasionally perform overhead work.  He can frequently reach in all directions except overhead, which he can do occasionally.  He can occasionally stoop, kneel, crouch, crawl, balance, and climb ramps and stairs.  He is precluded from climbing ladders, ropes, and scaffolding.  He can perform simple, routine, repetitive tasks and occasionally interact with the public.  He can work in close proximity to coworkers and supervisors, but would need to work independently. He can adapt to occasional changes in the work setting introduced gradually over one to two days.  He can maintain attention and concentration for two hours at a time.  He is unable to work at unprotected heights or around dangerous machinery or operate automotive equipment.

(R. 217).

Finally, the ALJ concluded that because there exists jobs in significant number in the national economy that Hill could perform such as silverware wrapper, garment folder, and rag sorter,[7] he was not disabled.  (R. 229).

**B. Plaintiff's Claims**.  As stated by Hill, he presents two issues for the Court's review:

1.    The Commissioner's decision should be reversed because the ALJ failed

---

[7]  The ALJ wrote that the position was "rage sorter."  (R. 229).  The court concludes that this is simply a scrivener's error and that she meant "rag sorter."  However, as will become apparent, this lack of attention to detail is indicative of and contributed to the errors in this case.

to properly consider the opinions of Dr. Lance Dyess, Mr. Hill's treating physician, or that of Dr. Willis Crawford, a consultative examiner according to proper standards.

2. The Commissioner's decision should be reversed, because the ALJ failed to find Mr. Hill met Listing 12.05C despite giving great weight to the opinion of Dr. Fred George, a consultative examiner.

(Doc. # 12, Pl's Br. at 3).

## IV. DISCUSSION

A disability claimant bears the initial burden of demonstrating an inability to return to his past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and his family or friends; and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981). The ALJ must also state, with sufficient specificity, the reasons for her decision referencing the plaintiff's impairments.

*Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added). Within this analytical framework, the court will

8

address the plaintiff's claims.

**A. Failure to properly weigh the evidence from treating physician.[8]** The law in this circuit is well-settled that the ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The Commissioner, as reflected in his regulations, also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1527 (d)(2)). It is not only legally relevant but unquestionably logical that the opinions, diagnosis, and medical evidence of a treating physician whose familiarity with the patient's injuries, course of treatment, and responses over a considerable length of time, should be given considerable weight.

The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). However, the ALJ must articulate the weight given to a treating physician's opinion and must articulate any

---

[8] The plaintiff also contends that the ALJ failed to properly consider the opinion of the consultative physician. Because the court concludes that a remand is necessary based on the ALJ's failure to properly consider the opinion of the plaintiff's treating physician, the court pretermits discussion of this issue.

reasons for discounting the opinion.  *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).

In this case, the ALJ gave the opinion of Hill's treating physician, Dr. Lance Dyess, little weight because, according to the ALJ, his opinion "is inconsistent with the record as a whole." (R. 227).

> First, Dr. Dyess is not considered a treating source, as defined in 20 CFR 404.1502 and 416.902, because the evidence does not establish an ongoing treatment relationship. Dr. Dyess provided findings from objective testing but he provided little treatment notes concerning the claimant's complaints, findings from examination, or effectiveness of treatment (Exhibit 9F). Further, the record indicates that Dr. Dyess has treated the claimant primarily through the emergency room and has not provided ongoing treatment in an effort to manage the claimant's conditions. In fact, the only time Dr. Dyess examined the claimant was in May 2003. The remainder of the records provided by Dr. Dyess are objective test results, not examination or treatment records (Exhibit 9F).

A review of the medical records demonstrates that the ALJ erred as a matter of law in her consideration of Dr. Dyess' opinion. In 2003, Hill was seen by Dr. Dyess for headaches and dizziness. (R.755). X-rays of Hill's spine demonstrated "spurs forming along the margins of the thoracic vertebral bodies," "narrowing of the C5-C6 inter-vertebral space with spurs forming along the margins of the bodies of C5 and C6," and "thoracic spondylosis." (R.756, 754, 163).

In March 2007, Hill presented to the emergency room complaining of hallucinations. (R. 737). He was seen by Dr. Dyess, and referred to mental health. (*Id*.). In November 2007, Hill presented to the emergency room because he was passing blood. (R. 731). X-rays suggested "degenerative disc disease of L5-S1." (R. 753, 734). He was referred to Dr. Dyess for a follow up appointment. (R. 731).

In February 2008, Hill presented to the emergency room complaining of low back pain

and a head injury. (R. 727). He was seen but referred to Dr. Dyess for a follow up appointment. (*Id*.) A CT scan of the cervical spine revealed "narrowing of the C2-C3, C4-C5 and C5-C6 inter-vertebral spaces with spur formation." (R. 730). There was also "sclerosis and narrowing of the middle and lower cervical apophyseal joints." (*Id*.) Finally, "[t]here are spurs forming along the margins of the lumbar vertebral bodies. There is narrowing of the L5-S1 inter-vertebral space. There is sclerosis and narrowing of the apophyseal joints at the L4-L5 level." (*Id*.)

On June 28, 2008, Dr. Dyess saw Hill at the emergency room because he was stabbed trying to break up a fight between two women. (R. 718).

On November 16, 2008, Hill was admitted to the hospital through the emergency room to be treated by Dr. Dyess. (R. 720, 723).

On December 26, 2008, Dr. Dyess treated Hill at the hospital for atypical chest pain. (R. 708-10, 714, 700, 686-87).

On April 25, 2009, Dr. Dyess treated Hill at the emergency room for a head injury. (R. 632). Dr. Dyess ordered a CT scan of Hill's head and spine. (*Id*.) The CT scan of Hill's spine again revealed "narrowing of the C4-C5 and C5-C6 inter-vertebral spaces," spurs, and "[e]ncroachment of the neuro-formina bilaterally at the C5-C6 level." (R. 634).

On May 16, 2009, Dr. Dyess saw Hill in the emergency room for chest pain. (R. 627). A chest x-ray revealed "spurs forming along the margins of the lower thoracic vertebral bodies" and "thoracic spondylosis." (R. 631, 746).

11

On October 22, 2009, Dr. Dyess saw Hill at the emergency room for right knee pain and swelling.  (R. 621).  A scan revealed a "[l]arge joint effusion."  (R. 626, 743, 817).

On November 11, 2009, Hill presented to the emergency room complaining of right knee pain.  (R. 619).

On January 4, 2010, Dr. Dyess saw Hill at the emergency room when he presented complaining of chest pain.  (R. 648).  He was subsequently admitted by Dr. Dyess. (R. 655-57). After conservative treatment with medication, Hill was discharged and referred to a cardiologist. (R. 657).

On April 24, 2010, Dr. Dyess treated Hill at the emergency room for a laceration to his finger. (R. 617).

On July 10, 2010, Dr. Dyess ordered a CT scan of Hill's lumbar spine to treat his low back pain.  (R. 740).  The scan revealed "narrowing of the L5-S1  intervertebral space with **severe degenerative disc disease at this level**" and "[s]pur formation in the lower lumbar spine."  (*Id*.) (emphasis added).

On August 26, 2010, Hill presented to the emergency room complaining of chronic back pain. (R. 802).  Dr. Dyess treated him on that date.  (R. 804)

Finally, on January 10, 2012, Hill presented to the emergency room complaining of headaches and dizziness. (R. 796). Although Hill was not seen by Dr. Dyess, he was instructed to return to the emergency room if needed and was told to follow up with Dr. Dyess.  (R. 797).

The law is well-settled; the opinion of a claimant's treating physician must be accorded

substantial weight unless good cause exists for not doing so.  *Jones*, 810 F.2d at 1005.  The ALJ

discounted Dr. Dyess' opinion because she did not consider Dr. Dyess to be a treating physician,

and because Dr. Dyess and Hill did not have an ongoing treatment relationship.   As

demonstrated by the medical records, the ALJ is simply wrong.  It is apparent from a review of

the records that Dr. Dyess saw Hill at least 12 times; significantly more than the one time in

2003 relied on by the ALJ to discredit Dr. Dyess.  Dr. Dyess last saw Hill in August 2010 less

than seven months prior to Dr. Dyess completing a physical capacities evaluation and clinical

assessment of pain.   Relying solely on Exhibit 9F, the ALJ ignored the medical records

contained in Exhibit 8F which demonstrate that Dr. Dyess treated Hill on a regular, consistent

basis.   The reasons given by the ALJ to discount Dr. Dyess' opinion are, therefore, not

supported by substantial evidence, and thus, this case must be remanded for further proceedings.

**B.   Failure to properly consider whether Hill meets Listing 12.05(C).**  Hill next

argues that the decision of the Commissioner should be reversed because the ALJ failed to find

that he meets Listing 12.05C, Intellectual disability.[9]  In 2010, the court remanded this matter

to the Commissioner "to develop the record regarding the extent of [Hill's] intellectual

functioning and mental impairments and their effects on his ability to work." *See Hill v. Astrue*,

1:09cv01-CSC, *10 (M.D. Ala. 2010).

On remand, the Commissioner secured a psychological evaluation of Hill. (R. 765-771).

---

[9]  "The 2013 version of the Listing of Impairments replaced the term 'Mental Retardation' with 'Intellectual Disability.'" *T.R.C. ex rel. Boyd v. Comm'r, Soc. Sec. Admin*, 553 F. App'x 914, 918 n.2 (11th Cir. 2014).

On September 22, 2010, Fred George, Ph.D., administered the Wechsler Adult Intelligence

Scale for Adults - IV.  Hill obtained a verbal comprehension IQ score of 68, a perceptual

reasoning scale I.Q. score of 82, a working memory scale IQ score of 77, and a processing speed

scale I.Q. score of 68.  His full scale I.Q. score was 70.  Dr. George indicated that the test results

were valid and accurate.  (R. 768).

The ALJ gave Dr. George's opinion great weight and incorporated his opinion of Hill's

borderline functioning into her residual functional capacity assessment.  (R. 228).          At

step three of the sequential evaluation process, the ALJ is required to determine whether the

claimant's impairments meet or equal one of the specific impairments set forth in 20 C.F.R. Pt.

404, Subpt. P, App. 1.  *See McDaniel*, 800 F.2d at 1030.  "The structure of the listing for

intellectual disability (12.05) is different from that of the other mental disorders listings."  20

C.F.R. Pt. 404, Subpt. P. App. 1, 12.00 MENTAL DISORDERS.

> To meet listing 12.05 ("intellectual disability"), a "claimant must at least (1) have
> significantly subaverage general intellectual functioning; (2) have deficits in
> adaptive behavior; and (3) have manifested deficits in adaptive behavior before
> age 22."  *Crayton*, 120 F.3d at 1219.  These requirements are referred to as the
> listing's "diagnostic criteria."  *See* 20 C.F.R. pt. 404, subpt. P., app. 1, § 12.00
> ("Listing 12.05 contains an introductory paragraph with the diagnostic description
> for [intellectual disability].")  In addition to satisfying the diagnostic criteria, a
> claimant must meet one of the four severity requirements in paragraphs A through
> D of the listing. *See id*. § 12.05.  Under paragraph C, the only paragraph at issue
> here, a claimant must show that [he] has both "[a] valid, verbal, performance, or
> full scale IQ score of 60 through 70 and a physical or other mental impairment
> imposing an additional and significant work-related limitation of function."

*Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910-911 (11th Cir. 2015).

Consequently, "a claimant meets the criteria for presumptive disability under section

12.05(C) when the claimant presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." *See Monroe v. Comm'r of Soc. Sec.*, 504 F. App'x 808, 810 (11th Cir. 2013) *quoting Lowery v. Sullivan*, 979 F.2d 835 (11th Cir. 1992). *See also Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1517 (11th Cir. 1985).

In this case, it appears that Hill has a valid verbal comprehension I.Q. score of 68 and a valid processing speed scale I.Q. score of 68. It also appears that Hill suffers "narrowing of the L5-S1 intervertebral space with **severe degenerative disc disease at this level**" and "[s]pur formation in the lower lumbar spine." (R. 740) (emphasis added). Nonetheless, the ALJ did not consider whether Hill meets Listing 12.05C.

The Commissioner argues that Hill did not prove that he meets Listing 12.05C because Hill does not have a diagnosis of mental retardation and the ALJ's "discussion of the evidence" shows that Hill does not meet Listing 12.05C. (Doc. # 15 at 12). First, Listing 12.05C does not require a *diagnosis* of mental retardation; rather, it requires a "valid verbal, performance, or full scale IQ of 60 through 70." Hill's test results fall within the parameters of Listing 12.05C. Thus, the plaintiff plainly has the requisite IQ score to meet the first prong of the listing.[10]

More importantly, however, the ALJ did not consider whether Hill meets the requirements of Listing 12.05C. The Commissioner argues that such consideration can be

---

[10] Because Hill presented valid IQ scores between 60 and 70, he is entitled to a presumption that the disability onset occurred before the age of 22. *Hodges v. Barnhart*, 276 F.3d 1265, 1268 (11th Cir. 2001) ("[A]bsent evidence of sudden trauma that can cause retardation, the IQ tests create a rebuttable presumption of a fairly constant IQ throughout [the claimant's] life.").

inferred from the ALJ's discussion of the evidence but the court disagrees. The Commissioner's argument is purely speculative. Neither the Commissioner nor the court can ascertain from the ALJ's decision whether or not the ALJ considered whether Hill meets Listing 12.05C because the ALJ makes no mention of Listing 12.05C. It is the responsibility of the Commissioner to determine whether Hill meets the requirements of Listing 12.05C, and her written decision must include sufficient reasoning to permit the court to determine that she has done so. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits is rational and supported by substantial evidence." *Cowart,* 662 F.2d at 735. "Failure to do so requires the case be vacated and remanded for the proper consideration." *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985).

## V.  CONCLUSION

"Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000). In light of the inadequate treatment of Dr. Dyess and the ALJ's failure to consider whether Hill meets Listing 12.05C, the court cannot determine whether the ALJ's conclusion that the plaintiff is not disabled is based on substantial evidence. Accordingly, the decision of the Commissioner will be reversed and this case remanded to the Commissioner for further proceedings consistent with this opinion.    A separate final judgment will be entered.

It is further

16

ORDERED that, in accordance with *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 fn. 2 (11th Cir. 2006), the plaintiff shall have **sixty (60)** days after he receives notice of any amount of past due benefits awarded to seek attorney's fees under 42 U.S.C. § 406(b). *See also Blitch v. Astrue*, 261 F. App'x 241, 242 fn.1 (11th Cir. 2008).

Done this 29th day of March, 2016.

   /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

17